UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| TECHNOLOGY & INTELLECTUAL PROPERTY STRATEGIES GROUP PC,<br><br>Plaintiff,<br><br>v.<br><br>BASIL P. FTHENAKIS, *et al.,*<br><br>Defendants.<br>_____/ | No. C 11-2373 MEJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>**(Dkt. No. 13)** |

## I. INTRODUCTION

Plaintiff Technology & Intellectual Property Strategies Group PC ("TIPS Group") brings this action against Defendants Basil P. Fthenakis and Cambridge CM, Inc. (Cambridge") under the United States Copyright Act, 17 U.S.C. §§ 101, et seq., the United States Trademark Act, 15 U.S.C. § 1125(a), *et seq.*, and California common law causes of action for conversion, breach of contract, and breach of fiduciary. Compl., Dkt. No. 1. Defendant Fthenakis has filed an Answer to TIPS Group's Complaint, in which he asserts counterclaims for breach of contract, violations of the California Labor Code, breach of shareholders agreement, conversion, and declaratory relief. Answer, Dkt. No. 6.

Currently pending before the Court is TIPS Group's Motion to Dismiss Fthenakis' Counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 13. Because the Court finds this matter suitable for resolution based on the parties' written submissions, the Court **VACATES** the hearing set for August 25, 2011. *See* Civil L.R. 7-1(b). After careful consideration of the parties' arguments, the Court **GRANTS** TIPS Group's motion as to the declaratory relief claim and **DENIES** the motion as to all other claims.

## II. BACKGROUND

TIPS Group is a California-based law firm that operates as a partnership. Compl. ¶ 6. The firm currently has two partners: Paul Hickman and Brad Close. Hickman Decl. ¶ 2, Dkt. No. 13-2. Fthenakis is an attorney who was a partner of TIPS Group from June 1, 2007 to February 15, 2011. Compl. ¶ 7. Pursuant to the terms of Fthenakis' employment agreement entered into with TIPS Group, Fthenakis received a base salary of zero dollars, a guaranteed bonus equal to 50% of the collections for billings performed by himself, and 10% of the collections for services performed by other attorneys on any client for which he was deemed the originating attorney. Answer, Ex. A, Dkt. No. 6-1. The employment agreement also provides that TIPS Group agreed to pay Fthenakis all compensation to which he was entitled up through the date of termination, as well as the guaranteed bonus for a period of twelve months after termination. *Id.* The agreement also provides for reimbursement for reasonable expenses incurred by Fthenakis in the performance of his duties under the agreement. *Id.*

Cambridge, a California corporation that provides project and construction management services, is a long-term client of Fthenakis. Compl. ¶¶ 3, 8. In May 2009, Cambridge engaged Fthenakis to represent it with respect to a dispute with a former joint-venture partner of Cambridge. *Id.* ¶ 8. TIPS Group alleges that the Cambridge dispute became the vast majority of Fthenakis' practice, yet Cambridge was slow to pay and accumulated a large overdue accounts receivable owed TIPS Group. *Id.* ¶ 9.

In late January of 2011, Fthenakis provided notice that his last day at TIPS Group would be February 15, 2011. *Id.* ¶ 10; Answer at 14. TIPS Group alleges that an inventory of books at the firm after Fthenakis' departure indicated that numerous law books paid for by TIPS Group had been removed by Fthenakis and/or Cambridge. Compl. ¶ 11. It also alleges that a website was created for Fthenakis that includes copyrighted works of TIPS Group such as a studio portrait of Fthenakis that had been published on the TIPS Group website for several years. *Id.* ¶ 12. The website also includes the statement, "As of February 16, 2011, the Law Offices of Basil P. Fthenakis have moved." *Id.* TIPS Group further alleges that Cambridge had been making monthly payments towards its overdue

accounts receivable up until Fthenakis' departure, and that it subsequently has not made any payments. *Id.* ¶ 13. The overdue accounts receivable due to TIPS Group is alleged to be $102,912.67. *Id.* TIPS Group alleges that Fthenakis is now virtually "In-House Counsel" for Cambridge. *Id.* at 14.

Subsequent to Fthenakis' departure, TIPS Group alleges that it received a Notice of Claim and Conference, informing it that Fthenakis had filed a claim with the Labor Commissioner of the State of California ("the Commissioner") including, *inter alia*, that the method by which TIPS Group compensated its shareholders/partners was improper. *Id.* ¶ 15. TIPS Group alleges that Fthenakis knew or should have known of the compensation method at least as early as January 1, 2008.

TIPS Group filed the present Complaint on May 13, 2011, alleging copyright infringement related to Fthenakis' portrait (*Id.* ¶¶ 16-28); false advertising related to the website statement regarding the date of Fthenakis' move (*Id.* ¶¶ 29-37); conversion for the alleged removal of books from TIPS Group (*Id.* ¶¶ 38-43); breach of contract for Cambridge's alleged failure to pay for legal services rendered (*Id.* ¶¶ 44-50); and breach of fiduciary duty related to the compensation method detailed in the employment agreement (*Id.* ¶¶ 51-62). TIPS Group and Cambridge subsequently reached a settlement and the claims by TIPS Group against Cambridge have been dismissed. Dkt. Nos. 11, 12.

On June 1, 2011, Fthenakis filed an Answer to the Complaint, as well as Counterclaims for breach of contract, violations of the California Labor Code, breach of shareholder's agreement, conversion, and declaratory relief. Answer, Dkt. No. 6. In his Counterclaims, Fthenakis alleges that sometime in late 2007 or early 2008, TIPS Group began making unauthorized deductions from his guaranteed bonus, which included deductions for the employer portion of payroll taxes and service fees related thereto. Answer at 13. Fthenakis contends that the aggregate amount of the unauthorized deductions exceeds $52,000. *Id.* Fthenakis further alleges that TIPS Group has failed to reimburse him for expenses incurred under the employment agreement. *Id.*

Fthenakis also maintains that, as of February 15, 2011, TIPS Group had collected sums in excess of $120,000 for billings he performed, but it had paid him only $20,721.58. *Id.* at 14.

1  Fthenakis demanded payment of the entire guaranteed bonus owed to him, but alleges that TIPS
2  Group refused payment. *Id.* Fthenakis alleges that TIPS Group has and will continue to collect
3  payment during the twelve months following his termination for billings performed by him, but has
4  failed and will fail to pay him. *Id.* at 14-15.

5  Finally, Fthenakis alleges that TIPS Group wrongfully took his personal property, including a
6  personal computer, a computer monitor, software and various books, proprietary manuals, and
7  personal files, and converted it to their own use. *Id.* at 16.

8  On July 6, 2011, TIPS Group filed the present motion to dismiss Fthenakis' counterclaims.
9  Dkt. No. 13. Fthenakis filed an Opposition on July 20, 2011 (Dkt. No. 17), and TIPS Group filed a
10 Reply on July 26, 2011 (Dkt. No. 22).

### III. LEGAL STANDARD

12 A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims
13 asserted in the complaint. *Navarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires
14 that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that
15 the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant
16 fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,
17 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
18 need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]
19 to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a
20 cause of action will not do. Factual allegations must be enough to raise a right to relief above the
21 speculative level." *Id.* at 555 (internal citations and parentheticals omitted). In considering a
22 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most
23 favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are
24 insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*,
25 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555.

26 If the court dismisses the complaint, it should grant leave to amend even if no request to
27 amend is made "unless it determines that the pleading could not possibly be cured by the allegation of

1 other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe,*
2 *Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### IV.  DISCUSSION

In its motion, TIPS Group argues that Fthenakis' counterclaims are "part of an apparent crusade by a sophisticated and experienced business litigator against his former law firm which currently has only two remaining partners/shareholders," and part of his threats to pursue "administrative and legal actions unless it agreed to pay him additional and retroactive bonuses at a time and in a manner of his own choosing." Mot. at 1.  TIPS Group contends that none of Fthenakis' counterclaims propound a cognizable legal theory or present sufficient facts alleged under a cognizable legal theory and are therefore properly dismissed under Rule 12(b)(6).  *Id.* at 12.  As to the fourth and fifth counterclaims, if the Court finds that they are not subject to dismissal, TIPS Group argues that they are subject to dismissal with leave to amend pursuant to Rule 12(e).

In response, Fthenakis argues that TIPS Groups' motion contains a series of baseless "make weight" claims intended to divert the Court's attention from the real dispute, which he contends is TIPS Group's breach of a written employment agreement.  Opp'n at 2.  He contends that TIPS Groups' arguments cannot withstand even the slightest scrutiny and the motion must therefore be denied.  *Id.*  Fthenakis also argues that the Court should strike the Declarations of Paul L. Hickman and William C. Milks III, as well as the exhibits attached thereto, that TIPS Group submitted in support of their motion as they contain improper matter outside the counterclaim.  *Id.* at 3.

The Court shall consider each counterclaim in turn.

### A.   Hickman and Milks Declarations

As a preliminary matter, the Court shall first consider whether to strike the declarations of Hickman and Milks, as Fthenakis has requested.  Paul Hickman's declaration includes two exhibits: (1) a copy of an Administaff[1] Employee Termination agreement signed by Fthenakis on February 7,

---

[1] TIPS Group contracted with Administaff, Inc., a professional employer organization, to provide human resources services including benefits and payroll services.  In order to provide its services, all TIPS Group employees also became employees of Administaff.  Hickman Decl. ¶ 4.

5

2011; and (2) a copy of an "Assignment Separate from Certificate" signed by Fthenakis on January 15, 2008.  Dkt. No. 13-2, Exs. A, B.  William Milks III's declaration includes email exhibits between counsel for both parties, related to TIPS Group's requests for Fthenakis to provide complete versions of documents attached to his Answer and Counterclaim.  Dkt. No. 13-1.

Fthenakis argues that the Court should not consider any extrinsic material in deciding a motion to dismiss under Rule 12(b)(6), and that the declarations and exhibits are irrelevant and immaterial to the subject motion.  In the alternative, Fthenakis argues that if the Court declines to exclude the declarations and exhibits, the motion must be treated as a summary judgment motion, and that any such motion is premature.  Opp'n at 3-4.

In response, TIPS Group argues that the Court can properly consider all facts encompassed within the pleading and any and all exhibits incorporated into the pleading.  Reply at 3.  As Fthenakis attached a portion of the employment agreement to his counterclaim, TIPS Group argues that the entire agreement is before the Court for purposes of its motion.  *Id.*  TIPS Group further argues that the termination agreement constitutes a part of the employment agreement because it is a writing signed by Fthenakis and an authorized representative of TIPS Group.  *Id.*  It contends that Fthenakis should have attached the termination agreement when he filed his counterclaim.  *Id.* at 4.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citation omitted).  A motion to dismiss made pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56 if either party to the motion submits materials outside the pleadings in support of or opposition to the motion, and if the court relies on those materials.  *Id.*; Fed. R. Civ. P. 12(b)(6).  There are, however, exceptions to this rule.  The Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment: documents attached to the complaint, documents incorporated by reference in the complaint, or matters that can be judicially noticed.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)

Here, the documents attached to the Hickman and Milks declarations are not properly the

subject of judicial notice; thus the Court may only consider them if they were submitted as part of the complaint and/or counterclaim or incorporated by reference therein.  First, as to Milks' declaration, the Court finds that it need not consider the e-mails attached thereto as they are not referenced in Fthenakis' counterclaim and do not affect the Court's analysis below.  *See Swedberg v. Marotzke*, 339 F.3d 1139, 1143-46 (9th Cir. 2003) (where the district court did not rely on the materials submitted outside the pleadings, a motion to dismiss is not converted into a motion for summary judgment).

As to Hickman's declaration, the Court need not consider the Assignment Separate from Certificate attached as Exhibit B, and it therefore need not strike the exhibit or convert TIPS Group's motion into a motion for summary judgment.  However, as to Exhibit A, TIPS Group claims that the Employee Termination Agreement constitutes part of the employment agreement which Fthenakis attached to his counterclaim.  Specifically, under Section 9(b) of the employment agreement, which Fthenakis attached to his counterclaim, the agreement may be amended by writing signed by Fthenakis and a duly authorized representative of TIPS Group.  Answer, Ex. A.  TIPS Group contends that the termination agreement is part of the employment agreement upon which Fthenakis' counterclaims rely because it is a writing signed by both parties.  However, while the Court agrees that the employment agreement permits amendments in writing signed by both parties, the termination agreement cannot be considered such.  Instead, the termination agreement *terminates* the employment agreement.  Thus, it is not a part of the employment agreement and should not be considered as part of TIPS Group's motion.  Regardless, as the Court need not rely on the termination agreement in its decision below, it need not convert the motion to a motion for summary judgment.

**B.     Breach of Contract**

In his first counterclaim for breach of contract, Fthenakis alleges that TIPS Group breached the employment agreement by making unauthorized deductions, failing and refusing to pay all of the guaranteed bonus when due, and further alleges that the breach is ongoing in that TIPS Group has continued to make collections for services he performed, and will further continue to fail to make payments of the guaranteed bonus.  Answer at 16.  Fthenakis also alleges that TIPS Group breached

7

the employment agreement by failing to reimburse him for expenses reasonably incurred in the performance of his responsibilities under the agreement. *Id.* To assert a breach of contract claim, the plaintiff must allege sufficient facts with regard to: (1) the existence and terms of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages. *Kin Wai Wu v. Mt Hawley Ins.*, 2011 WL 3443940, at *2 (N.D. Cal. Aug. 8, 2011).

In its motion, TIPS Group argues that the breach of contract must be dismissed for two reasons. First, TIPS Group argues that Fthenakis did not include any of the exhibits or documents that are referenced by and incorporated into the employment agreement. Mot. at 5. In response, Fthenakis argues that the exhibits are not in his possession and therefore could not be attached. Opp'n at 5. The Court finds that Fthenakis' failure to attach exhibits that may or may not be in his possession does not constitute a valid reason to dismiss his breach of contract claim. The counterclaim gives TIPS Group fair notice of what the claim is and the grounds upon which it rests – breach of the employment agreement signed by both parties. TIPS Group cites to *Neu v. Terminix Int'l, Inc.*, 2008 WL 962096, at *3 (N.D. Cal. Apr. 8, 2008), for the proposition that it is proper to dismiss a claim for breach of contract under Rule 12(b)(6) when the alleged contract is not filed along with the complaint. In, *Neu* the plaintiff admittedly failed to attach the relevant contracts that formed the basis of her claims. *Id.* She requested leave to amend, which the court granted, so that she could attach a copy of the relevant contract to her claim. *Id.* Here, Fthenakis states that he attached that portion of the contract which is in his possession, and he makes no claim that he possesses any portion that TIPS Group alleges he failed to include. Thus, dismissal with leave to amend would serve no purpose.

Second, TIPS Group argues that Fthenakis alleges breach of provisions of the employment agreement that do not obligate TIPS Group. Mot. at 6. Specifically, TIPS Group states that it contracted with Administaff to provide benefits and to administer payroll for its employees, and that this requires all employees of TIPS Group to also be employees of Administaff. *Id.*; Hickman Decl. ¶ 4. Because Fthenakis signed an Administaff Employee Termination agreement, and that agreement explicitly instructed that all compensation due to him on that date would be direct deposited into his

8

1  bank account, TIPS Group argues that Fthenakis acknowledged and agreed that all compensation to
2  which he was entitled would be direct deposited, and thus TIPS Group is released from any liability.
3  Mot. at 7-8.

4  In response, Fthenakis argues that the content and applicability of the Administaff form are
5  factual disputes and are therefore not grounds for a motion to dismiss. Opp'n at 6. Fthenakis points
6  to several terms contained in the Administaff form which he contends contradict TIPS Group's
7  interpretation of the form. *Id.* at 6-7.

8  Upon review of the parties' arguments, the Court sides with Fthenakis. TIPS Group's
9  argument and Fthenakis' response consist of factual disputes regarding the employment agreement at
10 issue. Such factual disputes are more properly considered at the summary judgment phase or at trial,
11 and not in the context of a motion to dismiss under Rule 12(b)(6), which merely tests the legal
12 sufficiency of the claims asserted in the complaint. *Navarro*, 250 F.3d at 732. The Court finds that
13 Fthenakis' breach of contract claim gives TIPS Group fair notice of the claim and the grounds upon
14 which it rests. Fthenakis alleges that TIPS Group breached the employment agreement by making
15 unauthorized deductions, failing and refusing to pay all of the guaranteed bonus when due, and
16 further alleges that the breach is ongoing in that TIPS Group has continued to make collections for
17 services he performed, and will further continue to fail to make payments of the guaranteed bonus.
18 Answer at 16. Fthenakis also alleges that TIPS Group breached the employment agreement by failing
19 to reimburse him for expenses reasonably incurred in the performance of his responsibilities under
20 the agreement. *Id.* Dismissal is therefore improper.

21 In its reply, TIPS Group for the first time argues that Fthenakis failed to join Administaff as
22 an indispensable party. However, "[t]he district court need not consider arguments raised for the first
23 time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Thus, the Court need
24 not consider this argument.

25 Based on the analysis above, the Court DENIES TIPS Group's motion to dismiss Fthenakis'
26 breach of contract counterclaim.

27 ///
28

9

**C.     California Labor Code Sections 221, 223, and 224**

Fthenakis' second counterclaim is for violation of California Labor Code sections 221, 223, and 224. Answer at 17. Fthenakis alleges that TIPS Group has violated these sections by deducting in excess of $52,000 from his wages. *Id.*

In its motion, TIPS Group raises two arguments. First, it argues that the second counterclaim is deficient for the same reasons set forth above as it is based upon the employment agreement. Mot. at 8. However, as discussed above, the parties' arguments related to the employment agreement consist of factual disputes, and the Court declines to consider them in the context of TIPS Group's 12(b)(6) motion.

TIPS Group's second argument is that Fthenakis' counterclaim is a rehash of an unsuccessful administrative action initiated before the Commissioner and is directly contradictory to his signed termination agreement. TIPS Group alleges that, shortly after terminating his employment, Fthenakis began to make demands concerning the timing and amounts of bonuses to be paid, and he threatened that he would take his issues up with the California Labor Commission. Hickman Decl. ¶ 5. On February 23, 2011, Fthenakis filed a claim against TIPS Group, for unpaid wages, unpaid bonuses and waiting time penalties, with the Commissioner in San Jose. Clark Decl. ¶ 2, Dkt. No. 18; Hickman Decl. ¶ 6. On April 5, 2011, the Commissioner issued a Notice of Claim and Conference. Req. for Jud. Notice, Ex. A, Dkt. No. 14.[2] On May 16, 2011, the parties appeared for the conference before Deputy Labor Commissioner Yuri Nashashibi in San Jose. Clark Decl. ¶ 3; Hickman Decl. ¶ 6. On that same date, the deputy commissioner issued a notice that he completed the investigation into Fthenakis' complaint, no further action was contemplated, and the file was being closed. Req. for Jud. Notice, Ex. B. TIPS Group argues that the conference constituted a hearing on Fthenakis'

---

[2] On July 6, 2011, TIPS Group filed a Request for Judicial Notice, requesting that the Court take judicial notice of the April 5, 2011 Notice of Claim and Conference issued by the Commissioner, attached as Exhibit A; and the Commissioner's May 16, 2011 Notice - Investigation Completed, attached as Exhibit B. As Fthenakis does not oppose TIPS Group's request, and both parties refer to the Commissioner's documents, the Court GRANTS TIPS Group's request pursuant to Federal Rule of Evidence 201.

1 claims and that the subsequent closure notice constitutes a binding decision that Fthenakis does not
2 have an actionable claim in this action. Mot. at 8-9.

3      In response, Fthenakis argues that the conference before Hon. Nashashibi was merely a
4 settlement conference that does not limit his right to bring his claims in court. Opp'n at 8-9. TIPS
5 Group does not address this issue in its reply brief. Regardless, the Court finds that Fthenakis'
6 argument is correct. First, Fthenakis directs the Court's attention to a page on the Commissioner's
7 website – http://www.dir.ca.gov/dlse/Policies.htm – which explains that the purpose of a conference
8 is "to determine if the claim can be resolved without a hearing." Thus, TIPS Group's argument that
9 the conference should be considered a hearing is without merit. Further, pursuant to California Labor
10 Code section 218, the Labor Code does not "limit the right of any wage claimant to sue directly or
11 through an assignee for any wages or penalty due him under [the Code]." TIPS Group provides no
12 authority which establishes that a conference before the Labor Commissioner limits Fthenakis' right
13 to pursue his claims in court. Accordingly, this argument fails.

14      Turning to Fthenakis' claims under the Labor Code, section 221 of the Labor Code provides
15 that: "It shall be unlawful for any employer to collect or receive from an employee any part of wages
16 theretofore paid by said employer to said employee." Cal. Lab. Code § 221. Section 223 provides
17 that: "Where any statute or contract requires an employer to maintain the designated wage scale, it
18 shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute
19 or by contract." *Id.* § 223. Section 224 permits "an employer to withhold or divert any portion of an
20 employee's wages when the employer is required or empowered so to do by state or federal law or
21 when a deduction is expressly authorized in writing by the employee. . . ." *Id.* § 224.

22      Fthenakis alleges that TIPS Group has, to date, deducted in excess of $52,000 in violation of
23 the Labor Code. Answer at 17. Specifically, Fthenakis argues that the employment agreement
24 permits deductions for specific benefits referenced in the agreement, and it requires the use of a
25 specific formula for the calculation of guaranteed bonus payments. Opp'n at 11. Fthenakis contends
26 that TIPS Group caused deductions to be made that are not a part of the parties' agreement, including
27 taxes and payroll service costs, thereby violating the Labor Code. The Court finds that these
28

11

allegations state a legally sufficient claim. *See, e.g., Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109, 1118 (1995) ("section 221 has long been held to prohibit deductions from an employee's wages for cash shortages, breakage, loss of equipment, and other business losses").

Based on the analysis above, the Court DENIES TIPS Group's motion to dismiss Fthenakis' counterclaim under the California Labor Code.

### D. Breach of Shareholder's Agreement

Fthenakis' third counterclaim is for breach of shareholder's agreement. Answer at 18. On or about January 1, 2008, Fthenakis joined as a party to a written Shareholder's Agreement, originally dated September 30, 2006. Answer, Ex. B. Under section 3.2 of the agreement, TIPS Group has the obligation to purchase all of the corporation's shares owned by a departed shareholder. *Id.* Section 3.4 of the agreement provides the method of computation for any such repurchase, based upon whether the departure is "Approved" of "Non-Approved." *Id.* Fthenakis alleges that section 3.7 of the agreement requires TIPS Group to repurchase his shares within 90 days after the termination of his employment. Answer at 18.

In its motion, TIPS Group argues that the agreement requires payment pursuant to a promissory note in five annual installments of principal and all accrued interest beginning one year from the repurchase date. Mot. at 11. In support of this argument, TIPS Group cites to section 3.4(ii) of the agreement. However, section 3.4(ii) states as follows: "If the Departing Shareholder is selling his/her Shares due to a Triggering Event which is a Non-Approved Departure, the Repurchase Price for all such Departing Shareholder's Shares shall be the Original Purchase Price." Answer, Ex. B. Section 3.4(ii) makes no mention of a payment plan pursuant to a promissory note. Upon review of the agreement, the Court notes that section 3.5(ii) contains the language referenced in TIPS Group's motion, yet that section is specific to approved retirements of shareholders. *Id.* As both parties agree that Fthenakis was terminated and did not retire, this section appears inapplicable. Regardless, TIPS Group's motion requires that the Court interpret terms of the agreement. Such factual disputes are more properly considered at the summary judgment phase or at trial, and not in the context of a motion to dismiss under Rule 12(b)(6), which merely tests the legal sufficiency of the claims asserted

in the complaint. *Navarro*, 250 F.3d at 732. The Court finds that Fthenakis' breach of shareholder's agreement claim gives TIPS Group fair notice of the claim and the grounds upon which it rests. Fthenakis has alleged the existence and terms of a written agreement, TIPS Group's breach of the agreement, and resulting damages. Accordingly, dismissal is iimproper and the Court DENIES TIPS Group's motion to dismiss Fthenakis' breach of shareholder's agreement counterclaim. *Kin Wai Wu*, 2011 WL 3443940, at *2 (stating elements of a breach of contract claim).

**E.     Conversion**

Fthenakis' fourth counterclaim is for conversion based on his allegation that TIPS Group wrongfully took his personal property, including a personal computer, a computer monitor, software and various books, proprietary manuals, and personal files, and converted it to their own use. Answer at 16, 18-19. In its motion, TIPS Group argues that Fthenakis' counterclaim is hard to comprehend because it does not provide the specificity necessary to identify the property being claimed. Mot. at 11. Based on this argument, TIPS Group requests that the Court dismiss this claim or, alternatively, order Fthenakis to provide a more definite statement. *Id.* at 12. In response, Fthenakis maintains that he has provided the level of detail required at the pleading stage.

Upon review of the parties' arguments, the Court sides with Fthenakis. In California, the tort of conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right; and (3) damages. *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 907 (9th Cir. 1992); *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). Here, Fthenakis has alleged that he owns the property identified above, that TIPS Group wrongfully took the property and converted it to their own use, and that such a taking resulted in damages. These allegations, if true, establish that Fthenakis is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2) (requiring that a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). As further details regarding the property may be obtained during discovery, the Court finds that Fthenakis has given the required notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Accordingly, the Court DENIES TIPS Group's motion to dismiss Fthenakis' conversion claim.

## F.     Declaratory Relief

Fthenakis' final counterclaim is for declaratory relief.  Answer at 19-20.  Fthenakis seeks a declaration that: (1) TIPS Group must pay guaranteed bonus amounts; (2) TIPS Group may not make any deductions from payments of guaranteed bonus amounts; (3) all guaranteed bonus payments constitute wages for which TIPS Group must pay the employer's share of all applicable payroll taxes; (4) Fthenakis is entitled to retain his own person property, including books he owned before his employment; and (5) Fthenakis is entitled to indemnification for any expenditures he incurred as a direct consequence of the discharge of his duties.  *Id.*

In its motion, TIPS Group argues that the claim for declaratory relief is "substantially duplicative" of the first and second counterclaims.  Mot. at 12.  TIPS Group further argues that any claim to property is a "non-issue" because it only claims property for which it paid.  *Id.*  In response, Fthenakis argues that TIPS Group simply ignores the issues upon which he seeks declaratory relief and focuses solely on the ownership of books.  Opp'n at 14.

Declaratory relief is only appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).  "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."  Fed. R. Civ. Proc. 57.  However, "the availability of other adequate remedies may make declaratory relief inappropriate . . . ." *StreamCast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345, at *4 (N.D. Cal. May 2, 2006); *see also Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.").  For example, a court found a breach of contract claim resolved all questions regarding contract interpretation, rendering declaratory judgment "duplicative." *Smithkline Beecham Corp. v. Continental Ins. Co.*, 2004 WL 1773713, at *1 (E.D. Pa. Aug. 4, 2004).

Here, there is nothing in Fthenakis' counterclaim to suggest the declaratory relief claim would entitle him to any damages or relief beyond the relief requested pursuant to his substantive claims.  In

fact, the requested declarations are wholly dependent on the Court's findings on his substantive claims. In this instance, Fthenakis' claims offer no reason to believe declaratory judgment will resolve any issues aside from those already addressed by the substantive claims. As such, the Court DISMISSES the declaratory relief counterclaim as needlessly duplicative.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** TIPS Group's motion to dismiss Fthenakis' counterclaim for declaratory relief and **DENIES** TIPS Group's motion as to all other claims.

**IT IS SO ORDERED.**

Dated: August 10, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge