UNITED STATES DISTRICT COURT

Northern District of California

TECHNOLOGY & INTELLECTUAL PROPERTY STRATEGIES GROUP PC,

        Plaintiff,

  v.

BASIL P. FTHENAKIS, *et al.,*

        Defendants.

No. C 11-2373 MEJ

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**(Dkt. No. 38)**

## I. INTRODUCTION

Plaintiff Technology & Intellectual Property Strategies Group PC ("TIPS Group") brings this action against Defendants Basil P. Fthenakis and Cambridge CM, Inc. ("Cambridge") under the United States Copyright Act, 17 U.S.C. §§ 101, et seq., the United States Trademark Act, 15 U.S.C. § 1125(a), *et seq.*, and California common law for conversion, breach of contract, and breach of fiduciary. Compl., Dkt. No. 1. Defendant Fthenakis has filed an Answer to TIPS Group's Complaint, in which he asserts counterclaims for breach of contract, violations of the California Labor Code, breach of shareholders agreement, and conversion.[1] Answer, Dkt. No. 6.

Currently pending before the Court is TIPS Group's Motion for Partial Summary Judgment Re: Fthenakis' California Labor Code counterclaims. Dkt. No. 38. Because the Court finds this matter suitable for resolution based on the parties' written submissions, the Court **VACATES** the hearing set for October 13, 2011. *See* Civil L.R. 7-1(b). After careful consideration of the parties' arguments, the Court **DENIES** TIPS Group's motion.

## II. BACKGROUND

TIPS Group is a California-based law firm that operates as a partnership. Compl. ¶ 6. The firm currently has two partners: Paul Hickman and Brad Close. Hickman Decl. ¶ 2, Dkt. No. 13-2.

---

[1] On August 10, 2011, the Court dismissed Fthenakis' counterclaim for declaratory relief. Dkt. No. 29.

Fthenakis is an attorney who was a partner of TIPS Group from June 1, 2007 to February 15, 2011. Compl. ¶ 7. Pursuant to the terms of Fthenakis' employment agreement entered into with TIPS Group, Fthenakis received a base salary of zero dollars, a guaranteed bonus equal to 50% of the collections for billings performed by himself, and 10% of the collections for services performed by other attorneys on any client for which he was deemed the originating attorney. Answer, Ex. A, Dkt. No. 6-1. The employment agreement further provides that TIPS Group agreed to pay Fthenakis all compensation to which he was entitled up through the date of termination, as well as the guaranteed bonus for a period of twelve months after termination. *Id.* The agreement also provides for reimbursement for reasonable expenses incurred by Fthenakis in the performance of his duties under the agreement. *Id.*

Cambridge, a California corporation that provides project and construction management services, is a long-term client of Fthenakis. Compl. ¶¶ 3, 8. In May 2009, Cambridge engaged Fthenakis to represent it with respect to a dispute with a former joint-venture partner of Cambridge. *Id.* ¶ 8. TIPS Group alleges that the Cambridge dispute became the vast majority of Fthenakis' practice, yet Cambridge was slow to pay and accumulated a large overdue accounts receivable owed to TIPS Group. *Id.* ¶ 9.

In late January of 2011, Fthenakis provided notice that his last day at TIPS Group would be February 15, 2011. *Id.* ¶ 10; Answer at 14. On February 7, 2011, Fthenakis signed an employee termination form, indicating that the effective date of his voluntary resignation and his last day with TIPS Group would be February 15, 2011. Hickman Dec. ¶ 4, Ex. A, Dkt. No. 38-1. The form provides that his "final wages" were to be "direct deposited" into Fthenakis' bank account, and that by signing the form, Fthenakis agreed that he would be deemed to have been paid his final wages as required by California Labor Code sections 201 and 202. *Id.* Under the heading "Additional Pay to be Given by Client at Termination," the amounts of wages, commissions and bonuses to be paid at termination were left blank. *Id.* However, the question "Is severance/separation pending a signed separation release?" was answered "No." *Id.* The box next to the word "No" was pre-checked on the Form. *Id.*

Fthenakis maintains that, as of February 15, 2011, TIPS Group had collected sums in excess of $120,000 for billings he performed, but it had paid him only $20,721.58. Answer at 14. On February 15, 2011, TIPS initiated a direct deposit to Fthenakis' account in the amount of $5,150. Fthenakis Decl. ¶ 26, Dkt. No. 42. Fthenakis demanded payment of the entire guaranteed bonus owed to him, but alleges that TIPS Group refused payment. Answer at 14. Fthenakis alleges that TIPS Group has and will continue to collect payment during the twelve months following his termination for billings performed by him, but has failed and will fail to pay him. *Id.* at 14-15.

On September 7, 2011, TIPS Group filed the present Motion for Partial Summary Judgment. Dkt. No. 38. The motion focuses on Fthenakis' counterclaim under California Labor Code § 201, which requires the immediate payment of wages upon discharge or layoff. In his counterclaim, Fthenakis alleges that he was entitled to an immediate payment of a guaranteed bonus in excess of $39,278.42, that TIPS Group failed to pay the bonus, and that it has tendered only a partial payment as of the date the counterclaim was filed. Answer ¶ 40. In its motion, TIPS Group argues that the employee termination form precludes any such claim. Fthenakis filed an Opposition on September 21, 2011 (Dkt. No. 31).

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(a), the Court shall grant summary judgment as to any claim or defense if the movant, by citing to particular parts of materials in the record, shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)[2]; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if, under the substantive law governing the claim or defense at issue, the fact is critical and might the outcome of the case. *See Anderson*, at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

---

[2] On December 1, 2010, a revised version of Rule 56 took effect. While portions of former Rule 56 have been amended, the Committee notes to the 2010 Amendments to Rule 56 indicate that the standard for granting summary judgment remained unchanged and does not affect court decisions construing and applying the language of Rule 56.

3

1    The party moving for summary judgment has the initial burden of citing to particular parts of
2 materials in the record, including portions of the pleadings, discovery and disclosures on file, and
3 affidavits, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,
4 477 U.S. 317, 323 (1986). When the non-moving party has the burden of proof at trial, the movant
5 need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id.*
6 at 325. If the movant meets this initial burden, the non-moving party must go beyond the pleadings
7 and-by its own affidavits or discovery-set forth specific facts showing a genuine issue for trial. *Id.* at
8 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the
9 non-moving party does not produce evidence to show a genuine dispute as to a material fact, the
10 moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In ruling on a motion for
11 summary judgment, inferences drawn from the underlying facts are viewed in the light most
12 favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.

### IV.  DISCUSSION

14   In its Motion, TIPS Group argues that by signing the employee termination form, Fthenakis
15 expressly acknowledged and agreed that any direct deposited funds were his final wages as required
16 by California Labor Code sections 201 and 202. Mot. at 4. TIPS Group contends that it paid
17 Fthenakis his final wages by direct deposit on February 15, 2011. *Id.* at 2. TIPS Group further
18 argues that if Fthenakis had any reason to question the amount of the final wages, he had the express
19 right to receive a physical, negotiable check for the payment of any undisputed portion of his final
20 wages and then file a claim under the Labor Code for the disputed amount. *Id.* at 4-5. However, by
21 signing the form, TIPS Group maintains that Fthenakis voluntarily relinquished any legal right to
22 challenge that he was not paid his final wages. *Id.* at 5-6.

23   In response, Fthenakis argues that the Employment Termination Form cannot be construed as
24 a waiver or release of claims for unpaid wages because such an interpretation would violate
25 California Labor Code section 206.5. Opp'n at 8. Specifically, Fthenakis argues that he signed the
26 form prior to his termination date and TIPS Group's payment of his "final wages." *Id.* at 9. Under
27 these circumstances, Fthenakis argues that any attempt to treat the form as a waiver would violate the

Labor Code. *Id.* Fthenakis maintains that by signing the form, he was not conceding that a forthcoming payment, in an unspecified amount, would constitute full payment of all wages due as of his termination date. *Id.*

Fthenakis further argues that the form is not a contract between the parties and, even if it was, TIPS Group's proposed interpretation of the form directly conflicts with the intent of the parties at the time it was signed. *Id.* at 10. Fthenakis contends that at the time the form was presented for signature, Paul Hickman expressly stated that the only purpose of the form was to allow use of the direct deposit method of payment for the payment to be made to Fthenakis on February 15, 2011, in order to avoid the trouble of typing a check to be hand delivered. *Id.* Fthenakis further contends that Hickman pointed out that the Release Box was checked "No," and further confirmed that Fthenakis would not be giving up the right to any money by signing the form. *Id.*; Fthenakis Decl. ¶ 16. Thus, Fthenakis argues that neither party intended the form to act as a release of all claims for failure to pay the full amount of all wages due. Opp'n at 10.

Fthenakis also argues that TIPS Group's interpretation of the acknowledgment form would result in a forfeiture because it is silent as to any statement of what items constitute "final wages" and is devoid of any calculation of or statement of the amount of final wages. *Id.* at 11. As such, the form is uncertain as a release because it fails to adequately describe what prerequisite payment must be made by the employer in order to render the release enforceable. *Id.* Fthenakis argues that the Court cannot sanction an interpretation of the form that allows the employer to shortchange the employee and cause him to forfeit all wages due in excess of the employer's unilaterally determined underpayment. *Id.* at 12.

Finally, Fthenakis argues that the acknowledgment form cannot operate as a waiver or release because TIPS Group failed to perform the concurrent condition of payment of the full amount of all compensation earned at termination. *Id.* at 13. Fthenakis argues that TIPS Group has presented no evidence to prove that all wages due to Fthenakis were paid on February 15, 2011. *Id.*

Upon review of the parties' arguments, the Court finds summary judgment inappropriate because TIPS Group has failed to meet its burden of demonstrating the absence of a genuine issue of

material fact. At the core of TIPS Group's motion is a dispute as to the correct dollar amount of wages owed to Fthenakis on his last day of employment. TIPS Group argues that the acknowledgment form constitutes an express agreement whereby it would be deemed to have fully paid Fthenakis' final wages as required by California Labor Code section 201. In support, TIPS Group relies on a statement in Mr. Hickman's declaration that Fthenakis was paid his "final wages" on February 15, 2011. Hickman Decl. ¶ 5. However, in his declaration, Hickman fails to state the amount of "final wages" that was paid on February 15, 2011, and fails to state the method of calculation of the purported "final wages" and how it complied with the terms of the Employment Agreement. Hickman cites to no factual evidence which establishes that the February 15 payment constituted all money due to Fthenakis. At the same time, Fthenakis contends that Hickman expressly stated that the only purpose of the form was to allow use of the direct deposit method of payment for the payment to be made to Fthenakis on February 15, 2011, in order to avoid the trouble of typing a check to be hand delivered. Opp'n at 10.

Moreover, Fthenakis claims that TIPS Group paid additional wages to him in early April of 2011. Fthenakis Decl. ¶ 28. This, too, demonstrates that a factual dispute exists as to whether Fthenakis' "final wages" were fully paid on February 15, 2011. Further, the form itself is silent as to the amount due to Fthenakis; thus, there is at least a factual dispute that reference to "final wages" in an unspecified amount constitutes full payment of all wages due as of Fthenakis' termination date. Based on the record before it, the Court cannot find that no genuine dispute exists. Accordingly, TIPS Group's motion must be denied.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** TIPS Group's Motion for Partial Summary Judgment. Dkt. No. 38. Fthenakis' cross-motions for sanctions and summary judgment are **DENIED**.

**IT IS SO ORDERED.**

Dated: September 28, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

6